UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LORRAINE M. GALLAGHER,

        Plaintiff,

   v.                              **DECISION AND ORDER**
                                        **06-CV-0547 (VEB)**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## I. Introduction

Plaintiff Lorraine M. Gallagher, challenges an Administrative Law Judge's ("ALJ") determination that she is not entitled to disability insurance benefits ("DIB") under the Social Security Act ("the Act").  Plaintiff alleges she has been disabled since February 28, 2003, 2003, because of limitations from cardiovascular disease.  Plaintiff met the disability insured status requirements of the Act at all times pertinent to this claim.

## II. Background

Plaintiff filed an application for DIB on October 6, 2003.  Her application was denied initially and, under the prototype model of handling claims without requiring a reconsideration step, Plaintiff was permitted to appeal directly to the ALJ.  See 65 Fed. Reg. 81553 (Dec. 26, 2000).   Pursuant to Plaintiff's request, an administrative hearing was held on November 18, 2004, before ALJ J. Lawson Brown, at which time Plaintiff, her husband, and her attorney appeared.  The matter was transferred to ALJ Robert Wright, who considered the case *de novo*, and on February 7, 2005, issued a decision finding that

Plaintiff was not disabled.  On March 3, 2006, the Appeals Council denied Plaintiff's request for review.

On May 4, 2006, Plaintiff filed a Civil Complaint challenging Defendant's final decision and requesting the Court to review the decision of the ALJ pursuant to Section 205(g) and 1631(c) (3) of the Act, modify the decision of Defendant, and grant DIB benefits to Plaintiff.[1]  The Defendant filed an answer to Plaintiff's complaint on August 24, 2006, requesting the Court to dismiss Plaintiff's complaint.  Plaintiff submitted Plaintiff's Brief on October 10, 2006.  On January 5, 2007, Defendant filed the *Commissioner's Brief In Opposition To Plaintiff's Brief And In Support of Defendant's Cross-Motion For Judgment On The Pleadings*[2] pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  After full briefing, the Court deemed oral argument unnecessary and took the motions under advisement.

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court affirms the decision of the Commissioner.

### III.  Discussion

### A.  Legal Standard and Scope of Review:

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. § 405(g), 1383 (c)(3);

---

[1] The ALJ's February 7, 2005, decision became the Commissioner's final decision in this case when the Appeals Council denied Plaintiff's request for review.

[2] Although no motion for judgment on the pleadings was filed, the moving party was excused from such filing under General Order No. 18, which states in part: "The Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings…"

Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will only be reversed if it is not supported by substantial evidence or there has been a legal error. See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams on Behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have

reached a different result upon a *de novo* review."  Valente v. Sec'y of Health and Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act.  See 20 C.F.R. § 404.1520, 416.920.  The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activi-ties.  If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled with-out considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gain-ful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72,77 (2d Cir. 1999); 20 C.F.R. § 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step.  See Bowen, 482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir. 1984).  The

final step of this inquiry is, in turn, divided into two parts.  First, the Commissioner must assess the claimant's job qualifications by considering his physical ability, age, education, and work experience.  Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform.  See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S. Ct. 1952, 1954, 76 L. Ed. 2d 66 (1983).

**B. Analysis**

**1.    Commissioner's Decision**

In this case, the ALJ made the following findings with regard to factual information as well as the five-step process set forth above: (1) Plaintiff met the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and was insured for benefits through September 30, 2003 (R. at 20);[3]  (2) Plaintiff has not engaged in substantial gainful activity since February 28, 2003, the alleged onset date of disability (R. at 20); (3) The medical evidence establishes that Plaintiff has a severe cardiac impairment, but does not establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4  (R. at 20); (4) Plaintiff's allegations regarding her limitations are overstated for the reasons set forth in the body of the decision (R. at 20); (5) Plaintiff has retained the capacity to perform her past relevant work as a clerical file clerk, which requires light exertional demands (R. at 20); (6) Because Plaintiff has

---

[3] Citations to the underlying administrative are designated as "R."

retained the residual functional capacity to perform her past relevant work, a finding of not disabled is required (R. at 20); and (7) Plaintiff has not been under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision (20 C.F.R. §§ 404.1520(e)and 416.920(e)) (R. at 20).  Ultimately, the ALJ determined Plaintiff was not entitled to a period of disability and disability insurance benefits as set forth in sections 216(i) and 223(d) of the Social Security Act (R. at 20).

### 2.    Plaintiff's Claims

Plaintiff challenges the decision of the ALJ on the basis that it is not supported by the substantial evidence of record.  Specifically, Plaintiff alleges (a) the ALJ did not give adequate consideration to Plaintiff's complaints of exhaustion and shortness of breath associated with her cardiac condition, (b) the ALJ failed to explicitly consider Plaintiff's obesity and its affect on her cardiac condition, and (c) the ALJ failed to consider a closed period of disability of one year following Plaintiff's heart attack.

### a.    The ALJ *Gave* Adequate Consideration to Plaintiff's Complaints of Exhaustion and Shortness of Breath

Plaintiff's first challenge to the ALJ's decision is that he did not give adequate consideration to her complaints of exhaustion and shortness of breath associated with her cardiac condition.  See Plaintiff's Brief, pp. 1, 3. Plaintiff asserts she is "tired all the time" and must nap for two hours to two and one-half hours in the middle of each day (R. at 190, 191, 192-193).  Also, she claims that she becomes short of breath if she exercises or exerts herself physically (R. at 188, 189,192).  Because the ALJ did not "clarify" Plaintiff's

symptoms of exhaustion and shortness of breath, Plaintiff alleges the ALJ's decision is not based on the substantial evidence of record, and should be reversed or remanded for further administrative proceedings.  See Plaintiff's Brief, pp. 1, 3.

Plaintiff was admitted to the Cardiac Center of St. Peter's Hospital in Albany, New York, on February 28, 2003, with evidence of an infero-lateral myocardial infarction[4] (R. at 102-118, 125-137,139-143).  A stent was placed in her occluded obtuse branch of the left circumflex artery, and Plaintiff was released from St. Peter's Hospital on March 2, 2003 (R. at 144-150).

On July 8, 2003, Plaintiff followed up with her cardiologist, Dr. H. Louis Clinton, Jr. (R. at 170-171).  Dr. Clinton noted Plaintiff had been doing "relatively well" since her last visit (R. at 170).  Plaintiff denied any chest discomfort, but claimed "some shortness of breath, when walking up an incline for example."  Id.  Upon physical examination, Dr. Clinton recorded Plaintiff's lungs were clear, her heart rhythm was regular, without murmur, gallop, or rub, and she had no edema in her extremities.  Id.  The doctor observed that Plaintiff was obese.  Id.  In his treatment plan, Dr. Clinton noted Plaintiff "seems to be doing very well from a cardiac standpoint.  She was strongly advised to stop smoking and to not push herself beyond her limit with respect to her physical activities."  Id.  Dr. Clinton made no comment about Plaintiff's obesity, and no recommendation for weight loss, in Plaintiff's treatment plan.  Id.

---

[4] Infarction involving the inferior and lateral surfaces of the heart and producing indicative changes in the electrocardiogram in leads II, III, aVF, $V_5$, and $V_6$.  See http://www.drugs.com/dict/inferolateral-myocardial-infarction.html.

Dr. Clinton examined Plaintiff again on October 10, 2003 (R. at 168-169). He noted that since Plaintiff's last visit, she had had "occasional episodes of chest discomfort which occur with overexertion, e.g. walking up a hill. She also admits to some shortness of breath with exertion" (R. at 168). Plaintiff's physical examination was unremarkable (R. at 168-169). In the treatment plan, the doctor assessed Plaintiff had "a stable anginal pattern. … She was again advised to stop smoking" (R. at 168). Dr. Clinton prescribed sublingual nitroglycerin for Plaintiff's chest pain. Id.

Plaintiff was examined by Dr. Clinton on May 26, 2004, when she reported "occasional episodes of chest discomfort which occur with over exertion" (R. at 166-167). Her physical examination was unremarkable, and her EKG showed non-specific changes (R. at 166). Dr. Clinton noted Plaintiff was still smoking one to two packs of cigarettes per day. Id. Again, the doctor recorded that Plaintiff had a stable anginal pattern. Id.

On August 25, 2004, Dr. Clinton examined Plaintiff again (R. at 163-164). He noted "[she] has continued to have some discomfort with exertion, e.g. walking upstairs. The discomfort is short lived, otherwise she has been doing well. Tobacco, as before" (R. at 163). Plaintiff's physical examination was unremarkable, and the doctor assessed that she had a stable anginal pattern. Id. This is the last entry from Plaintiff's treating physician in her record.

"Disability" is defined as the inability to engage in any substantial gainful employment by reason of any medically determinable impairment

which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.  See 42 U.S.C.A. § 423(d)(1)(A).  An individual shall be determined to be under a disability only if his or her physical or mental impairment or impairments are of such severity that he or she is not only unable to do his or her previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C.A. § 423(d)(2)(A).  Thus, the presence of a severe impairment or multiple impairments is insufficient to establish disability absent evidence that Plaintiff has functional limitations that would preclude her from engaging in any substantial gainful activity.  See Coleman v. Shalala, 805 F. Supp. 50, 53 (S.D.N.Y. 1995); Rivera v. Harris, 623 F.2d 212, 215-216 (2d Cir. 1980).

Further, an individual's statements about his or her condition are not enough to establish disability.  See 20 C.F.R. § 404.1529.  The Commissioner's regulations require that an ALJ consider a claimant's observable signs and laboratory findings, as well as reported symptoms, when determining whether or not a disability exists within the meaning of the regulations.  Id.  When an ALJ determines a claimant has an underlying physical and/or mental impairment(s) that could reasonably be expected to produce the reported pain or other symptoms, the ALJ must then evaluate the intensity, persistence, and limiting effects of the symptoms on the claimant's ability to do work-related activities.  See 20 C.F.R. § 404.1529(c); SSR 96-7p.

In this matter, the ALJ found that Plaintiff had a severe cardiac impairment, but also found her symptoms and limitations were overstated (R. at 18-20).  As an example, Plaintiff was examined by her treating cardiologist, Dr. Clinton, in July 2003, four months after her infero-lateral myocardial infarction and stenting procedure (R. at 170-171).  The doctor reported Plaintiff denied any chest discomfort, and complained of shortness of breath when walking up an incline (R. at 170).  Dr. Clinton opined Plaintiff was "doing very well from a cardiac standpoint," but should stop smoking.  Id.

Three months later, in October 2003, Plaintiff reported to Dr. Clinton occasional chest discomfort with over-exertion, and shortness of breath with exertion (R. at 168-169).  The doctor noted Plaintiff had a stable anginal pattern, revised her dosages of medications, and again advised that she stop smoking (R. at 168).

In May 2004, Plaintiff reported to Dr. Clinton occasional episodes of chest discomfort that occurred with over-exertion (R. at 166-167).  She did not report shortness of breath at this visit.  Id.  The doctor again noted Plaintiff had a stable anginal pattern and continued to smoke one to two packs of cigarettes daily (R. at 166).

Three months later, in August 2004, Plaintiff reported to Dr. Clinton that despite some short lived chest discomfort upon exertion, she had been doing well (R. at 163-164).  The doctor recorded that she continued to smoke (R. at 163).

In addition to the records provided by Plaintiff's treating cardiologist, the ALJ considered Plaintiff's activities of daily living, the location, duration, and frequency of Plaintiff's symptoms, the factors that aggravated Plaintiff's symptoms, and the medications and other measures Plaintiff used to treat her symptoms (R. at 18-19).  See 20 C.F.R. § 404.1529(c)(d); SSR 96-7p.  While Plaintiff claimed shortness of breath with exertion, and such excessive fatigue that she had to take lengthy naps every afternoon, the ALJ noted she was independent in her activities of daily living, got her children ready for school each morning, did the family laundry, shopped for clothing and groceries, prepared meals, played cards, used a computer, and took care of the family cat and its litterbox (R. at 18-19).  In her Adult Function Report, Plaintiff stated that she drove an automobile daily, walked three or four times per week for 10 to 15 minutes per walk, and performed miscellaneous household chores including vacuuming, dusting, and dishwashing (R. at 95-97).

Despite Plaintiff's assertion that the ALJ did not consider her symptoms of shortness of breath and exhaustion attributable to her cardiac impairment, it is clear to the Court from the ALJ's decision that he carefully examined and considered Plaintiff's claims in light of all of the evidence of record.  The ALJ did not doubt Plaintiff experienced occasional chest discomfort and shortness of breath; however, given Dr. Clinton's minimal findings upon physical examination of Plaintiff, and Plaintiff's reports to Dr. Clinton that she had only occasional episodes of short lived chest discomfort and shortness of breath with over-exertion, as well as testimony about her

symptoms and regular activities, the ALJ was unable to find Plaintiff disabled within the meaning of the regulations (R. at 18-20, 163, 166, 168, 170). Further, the Court notes Plaintiff did not report to Dr. Clinton any symptoms of excessive fatigue or exhaustion at her follow up visits (R. at 163-164, 166-167, 168-169, 170-171).

Thus, the Court finds the ALJ properly considered Plaintiff's symptoms and reported limitations, along with the medical and other evidence in the record, and further finds the totality of evidence does not substantiate Plaintiff's claims that her shortness of breath, exhaustion, and other symptoms were disabling.  Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence (R. at 15-16).  See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir. 1984).

### b.   The ALJ did not Err by Failing to Explicitly Consider Plaintiff's Obesity and Its Affect On Her Cardiac Condition

12.    Plaintiff's second challenge to the ALJ's decision is that the ALJ failed to consider the effects of Plaintiff's obesity in the sequential evaluation process, either as a severe impairment by itself, or in combination with Plaintiff's cardiac impairment.  (See Plaintiff's Brief, pp. 3-4).  Plaintiff suggests the Court should remand the Commissioner's decision in this case

to allow consideration of how Plaintiff's obesity impacts her cardiac problems and her ability to engage in substantial gainful activity.  Id.

Plaintiff does not clearly argue in her brief that the ALJ was explicitly required by the guidelines in SSR 02-1p to consider her obesity and its effect on her cardiac impairment during the five-step sequential evaluation. See Plaintiff's Brief, pp.3-4.  She merely restates portions of the social security ruling.  Id.  However, the Court will assume that Plaintiff intended to argue that SSR 02-1p requires an ALJ to consider a claimant's obesity and its effects on his or her severe impairments in all SSI and/or DIB claims as the basis of Plaintiff's second challenge to the ALJ's decision.

Contrary to Plaintiff's implied assertion that the ALJ was explicitly required by the guidelines in SSR 02-1p to consider Plaintiff's obesity during the five- step sequential evaluation, the ALJ was required to consider only those impairments that Plaintiff claimed to have, or about which the ALJ received evidence.  See Rutherford v. Barnhart, 399 F.3d 546, 552-553 (3d Cir. 2005), citing Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004); see also 20 C.F.R. 404.1512(a).   (". . .a remand is not required here because it would not affect the outcome of the case.  Rutherford never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments.  So even if we assume – in accordance with common sense – that the administrative record evidence of Rutherford's 5' 2" height and her weight of some 245 pounds sufficed to alert the ALJ that obesity could be a factor, Rutherford has not specified how

that factor would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk, and manipulate her hands and fingers.")  Id. at 553.

Plaintiff did not list obesity in her application for disability benefits, or in her request for a hearing before an ALJ (R. at 29, 49-50, 67-68).  During her hearing, Plaintiff disclosed her height and weight when questioned by the ALJ, but did not assert her weight aggravated her cardiac impairment or her symptoms (R. at 187).   While reports of Plaintiff's height and weight within her medical evidence put the ALJ on notice that Plaintiff was obese, no further information was contained in the medical evidence provided by either Plaintiff or her doctor that her weight contributed significantly to her cardiac symptoms.   Notably, Plaintiff's treating cardiologist did not suggest that her weight was a significant factor in her cardiac problem, nor did he recommend a weight loss program in her treatment plan; instead, he focused on Plaintiff's need to stop smoking as a way to alleviate the symptoms of chest discomfort and shortness of breath that she reported (R. at 163, 166, 168, 170).  Thus, it can be logically inferred that while the ALJ did not explicitly consider Plaintiff's obesity as part of his decision, it was factored indirectly into his decision as part of the doctor's opinions and other evidence contained in the record.  See Skarbek v. Barnhart, 390 F.3d 500, 504 (7th Cir. 2004). ("Notably, Skarbek does not specify how his obesity further impaired his ability to work, but speculates merely that his weight makes it more difficult for him to stand and walk.  Additionally, the ALJ adopted the limitations suggested by the

14

specialists and reviewing doctors, who were aware of Skarbek's obesity.

Thus, although the ALJ did not explicitly consider Skarbek's obesity, it was

factored indirectly into the ALJ's decision as part of the doctors' opinions.")

Id.  Therefore, the Court finds the ALJ did not err when he assessed Plaintiff's

impairments without an explicit consideration of her obesity.

> **c.   Plaintiff's Claim that the ALJ Failed To Consider A
> Closed Period Of Disability Of One Year Following Her
> Heart Attack Lacks Merit**

13.    Plaintiff challenges the decision of the ALJ on the basis that he

failed to consider a closed period of disability of one year following her heart

attack.  See Plaintiff's Brief, pp. 1, 4.  Presumably, Plaintiff is arguing that

even though the ALJ found that she was not under a disability at any time

from her alleged onset of disability date of February 28, 2003, through the

date of his decision on February 7, 2005, he should have, at the very least,

found her to be disabled from February 28, 2003 through February 28, 2004.

This challenge is without merit.  A claimant will not be found to be

disabled, and entitled to benefits under the Act, unless he or she has

demonstrated through medical and other evidence "an inability to engage in

any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less

than 12 months…".  See 42 U.S.C. § 423(d)(1)(A).  In this matter, there is

nothing contained in Plaintiff's medical evidence that suggests she had

anything other than a satisfactory, and fairly rapid, recovery from her

myocardial infarction.  As an example, Plaintiff's treating cardiologist, Dr.

Clinton, opined that she seemed "to be doing very well from a cardiac

standpoint" four months after her release from the hospital (R. at 170).

Plaintiff had "excellent results" from the stent placement in her obtuse

marginal circumflex artery.  Id.  Seven months after her release from the

hospital, Dr. Clinton reported Plaintiff had a "stable anginal pattern" and

understood the proper use of sublingual nitroglycerin to relieve her symptoms

(R. at 168).  Approximately 15 months after Plaintiff's release from the

hospital, Dr. Clinton noted she had only "occasional episodes of chest

discomfort that occur with over exertion" (R. at 166).  Plaintiff was again

reported by her doctor as "doing well" 18 months after her hospitalization (R.

at 163).

Additionally, Plaintiff's medical records were reviewed by a non-

examining State agency physician, Dr. Richard Blaber, on December 15,

2003 (R. at 151).  Dr. Blaber assessed Plaintiff as capable of performing a full

range of light work ten months after Plaintiff's myocardial infarction.  Id.  While

the ALJ afforded controlling weight to Plaintiff's treating cardiologist, Dr.

Clinton, whose opinions suggest Plaintiff had "excellent results" from her

stenting procedure and who raised no particular concerns other than Plaintiff

refrain from tobacco use, he gave "some weight" to the opinion of Dr. Blaber

(R. at 18, 163, 166, 168, 170)  It is well-settled that an ALJ is entitled to rely

upon the opinions of State agency medical and psychological consultants

since they are deemed to be qualified experts in the field of social security

disability.  See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), 416.927(f)(2).  Such reliance is particularly appropriate where, as here, the opinion of the State agency physician is supported by the weight of the record evidence.  See Diaz v. Shalala, 59 F.3d 307, 31 n.5 (2d Cir. 1995).

In this matter, the ALJ found Plaintiff was not under a disability, as defined in the Act, *at any time* through the date of his decision, and this finding is firmly rooted in Plaintiff's medical and other evidence (R. at 20). Thus, the Court finds that the decision of the ALJ was supported by substantial evidence when he did not consider a closed period of disability of one year after Plaintiff's heart attack.

## Conclusion

14.     After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision in this case, including the objective medical evidence and supported medical opinions.  It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians and the State agency medical consultant, and afforded Plaintiff's subjective claims of pain and limitations an appropriate weight when rendering his decision that Plaintiff is not disabled.  The Court finds no reversible error, and further finding that substantial evidence supports the ALJ's decision, the Court will grant Defendant's Motion for Judgment on the Pleadings and deny Plaintiff's motion seeking the same.

IT IS HEREBY ORDERED, that Defendant's Motion for Judgment on the Pleadings is GRANTED.

FURTHER, that Plaintiff's Motion for Judgment on the Pleadings is denied.

FURTHER, that the Clerk of the Court is directed to take the necessary steps to close this case.

SO ORDERED.

Dated:  May 18, 2009
       Albany, New York

Victor E. Bianchini
United States Magistrate Judge